Ferguson E. PETERS and Gayle S. Peters, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Frederick T. PETERS and Christina A. Peters, Plaintiffs,

v.

UNITED STATES of America, Defendant.

ESTATE of Frederick C. PETERS, Deceased, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant (two cases).

Lewis W. PETERS and Patricia H. Peters, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. FL 73–84–Civ–NCR, FL 73–85–Civ–NCR, FL 73–87–Civ–NCR to FL 74–89–Civ–NCR.

United States District Court, S. D. Florida, Ft. Lauderdale Division.

April 30, 1974.

---

Frederick C. Peters, his three sons, and Berenice T. Peters were the owners of a tract of about 5,700 acres of vacant land situate in Broward County, Florida in the vicinity of the city of Plantation, (the Peters tract). Such acreage had been held by them for about twenty years and was used for grazing, farming and agricultural pursuits. About January 2, 1962, these members of the Peters family entered an "inter se" contract which confirmed the percentage interest of each member of the Peters family in the Peters tract, as follows:

| | |
|---|---|
| Frederick C. Peters | 56.5% |
| Berenice Todd Peters | 7.5% |
| Frederick Todd Peters | 12.0% |
| Lewis William Peters | 12.0% |
| Ferguson Edgar Peters | 12.0% |

2. As of January 2, 1962, an "option agreement" was entered into with respect to the Peters tract between Frederick C. Peters and Berenice T. Peters, and Frederick T. Peters, Lewis W. Peters and Ferguson E. Peters, joined by their respective wives and David B. Cassat (Cassat), F. E. Dykstra (Dykstra), and Norman W. Johnson (Johnson), the (Cassat Group.) That agreement is referred to as the "January 2 Agreement."

3. On April 25, 1962, the Cassat group transferred and assigned the "January 2, 1962 Agreement" to a Florida corporation, Plantation Development Corporation (PDC). The Peters family consented to such transfer and assignment to PDC.

4. Under paragraph 3 of the January 2, 1962 Agreement, the Cassat group paid the sum of $25,000 in cash to the Peters family when the January 2 Agreement was executed, and gave to them a promissory note dated January 18, 1962, in the amount of $175,000.00 payable July 1, 1962 for the balance of the $200,000.00 called for under paragraph 3 as a deposit on the option.

5. In the year 1962, the Cassat group and the PDC made total payment of $50,000.00 on the January 18, 1962, promissory note, so that at the end of

Kenneth G. Anderson of Culverhouse, Tomlinson, Mills, DeCarion & Anderson, Jacksonville, Fla., for plaintiffs.

John F. Murray by Jay R. Weill, Tax Div., Dept. of Justice, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., for defendant.

ROETTGER, District Judge.

The parties stipulated that all of the cases be consolidated and tried together; consequently, these suits for refund of income taxes came on for trial before the court without a jury.

## FINDINGS OF FACT

1. The transaction giving rise to this case commenced about January 2, 1962.

that year, the balance of $125,000.00 remained unpaid.

6. Under date of July 13, 1962, the Peters family extended the due date of the remaining unpaid balance on the promissory note in the following manner: $25,000.00 was due to be paid August 15, 1962, and $100,000.00 was due on or before January 15, 1963.

7. Neither the Cassat group nor PDC made the payment of $250,000.00 of January 2, 1963 referred to at paragraph 9(b) of the January 2, 1962 Agreement.

8. By May 2, 1963, there remained unpaid on the January 18, 1962 promissory note due from the Cassat group and PDC the sum of $50,000.00. On or before June 5, 1963, the Cassat group and PDC paid the $50,000.00 plus accrued interest.

9. On or about July 26, 1963, PDC assigned the January 2, 1962 Agreement to its wholly owned subsidiary, Plantation Farms, Inc., and the Peters family consented to the assignment.

10. On or about July 31, 1963, the Peters family executed a "Covenant Not to Sue" which was thereafter delivered to the Cassat group and PDC.

11. On or about August 8, 1963, Frederick C. Peters executed an Irrevocable Divisible Trust Agreement. The Trustees under such Trust Agreement were Frederick C. Peters, Lewis W. Peters, and Ferguson E. Peters, and the beneficiaries of the Trust were the grandchildren of Frederick C. Peters.

12. On August 7, 1963, Frederick C. Peters made a gift of $12,000.00 in cash for the account of the Frederick C. Peters Grandchildren Trust.

13. On August 8, 1963, Frederick C. Peters Grandchildren Trust paid to PDC the sum of $10,000.00 for 50 shares of the capital stock of Plantation Farms, Inc., which was all of its outstanding shares. Under date of August 8, 1963, PDC signed over to the trustees of the Frederick C. Peters Grandchildren Trust Certificate No. 1 for 50 shares of the capital stock of Plantation Farms, Inc.

14. Under date of August 8, 1963, a meeting of the stockholders and directors of Plantation Farms, Inc. was held at Plantation, Florida, and among other things, a new board of directors of Plantation Farms, Inc. was elected, which comprised of Frederick C. Peters, Lewis W. Peters, and Ferguson E. Peters.

15. Under date of August 8, 1963, an Amendment to Option Agreement was entered into between Frederick C. Peters, Berenice Todd Peters, Frederick T. Peters, Lewis W. Peters, and Ferguson E. Peters, and their respective wives, and Plantation Farms, Inc. The schedule of payments which called for a payment of $250,000 on the following January 2nd increasing to a level of $600,000 within two years was amended to reduce the payments due to $10,000 for the life of the option agreement.

16. On or about September 25, 1963, Plantation Farms, Inc. entered into a statutory merger agreement with three other Florida corporations. Plantation Farms, Inc. was the surviving and continuing corporation in such merger. The corporations merged into it were:

(1) Old Plantation Corporation, a Florida corporation, which had been organized on November 7, 1946. Its stock was held prior to the merger by Berenice T. Peters, Frederick T. Peters, Lewis W. Peters and Ferguson E. Peters.

(2) Plantation Cattle Company, a Florida corporation which was originally organized on September 1, 1949, the stock of which was held prior to the merger by Frederick C. Peters, Frederick T. Peters, Berenice T. Peters, Lewis W. Peters, and Ferguson E. Peters.

(3) Plantation Service Company, a Florida corporation organized on April 3, 1950, the stock of which prior to the merger was held by Berenice T. Peters, Frederick T. Peters, Lewis W. Peters and Ferguson E. Peters.

17. By virtue of the statutory merger of the four corporations, as of September

25, 1963, the outstanding stock of Plantation Farms, Inc. was held as follows:

| STOCKHOLDER | NUMBER OF SHARES |
|---|---|
| Berenice T. Peters | 76,600 |
| Frederick C. Peters | 13,600 |
| Frederick T. Peters | 76,600 |
| Lewis W. Peters | 76,600 |
| Ferguson E. Peters | 76,600 |
| Frederick C. Peters Grandchildren Trust | 80,000 |

The 80,000 shares issued to the Frederick C. Peters Grandchildren Trust was a reissuance in exchange for Certificate No. 1, which it had received for 50 shares from PDC.

18. Under date of November 18, 1964, a "Suboption Contract" was made and entered between Plantation Farms, Inc. as "Suboptioner" and Francis B. Burch of Baltimore, Maryland as "Suboptionee." The payments schedule under the suboption contract was increased over that in the original option agreement and provided for virtually the same obligations upon the part of the suboptionees as were placed upon the optionees in the original option agreement.

19. Plaintiffs contend that the option agreement did not expire upon the defaults of the optionees and that the transactions on or about August 8, 1963 were for legitimate business purposes and not a sham to avoid taxes. Their contention is that the basic business purposes were to have the optionees cure the title defects in some of the tracts covered by the option agreement and to make sure that, in the event of default, the land was restored to its original state. The latter benefit was obviated by a covenant not to sue given by the Peters on August 8, 1973. The court finds there was no evidence that Plantation Farms, Inc. made any effort in the period from August 8, 1963 to November 18, 1964 to cure the title defects or made any effort to return the land to its original status. In addition, the court finds there is no proof that Plantation Farms, Inc. made the payment in the curiously reduced amount of $10,000 on the due date of January 2, 1964.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the action and the parties under Title 28 U.S.C. Section 1346(a)(1).

2. The August 8, 1963 purchase by the Frederick C. Peters Grandchildren Trust of all of the outstanding stock of Plantation Farms, Inc., was done solely in order to avoid the payment of income tax and for no other reason. On that date, the taxpayers herein became both the optionors and optionees under the January 2, 1962 Option Agreement.

3. Thus, since the transaction served no other purpose than tax avoidance, it will not be given effect by this Court for federal tax purposes. The court is quick to point out the court does not in any way assume any such action as even remotely resembling fraud on the part of the Peters' family. The court knows one of the plaintiffs and has the highest respect for him.

4. Accordingly, this court holds that the option terminated for federal tax purposes in 1963 and the $200,000.00 received by the plaintiffs as a deposit on the original option be treated as ordinary income to them in that year.